UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| FEDERAL INSURANCE COMPANY, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | Civil Action No. 1:20-cv-10403-ADB |
| | * | |
| FIRE SPRINKLER TECHNOLOGY, INC. | * | |
| and NEW ENGLAND FIRE SYSTEMS, INC., | * | |
| | * | |
| Defendants. | * | |
| | * | |

**MEMORANDUM AND ORDER**

BURROUGHS, D.J.

Federal Insurance Company ("Plaintiff") filed this action against Defendants Fire Sprinkler Technology, Inc. ("FST") and New England Fire Systems, Inc. ("NEFS"). [ECF No. 1]. Plaintiff asserts claims for breach of contract and negligence against FST and NEFS that arise from two flooding incidents at Forestdale Park Senior Living, 341 Forrest Street, Malden, Massachusetts (the "Subject Property"). [Id.]. Currently before the Court are Defendant FST's motions (1) to amend its answer to include new factual allegations and to assert crossclaims of contribution and common law indemnity against co-defendant NEFS ("motion to amend the answer"), [ECF No. 21], and (2) to assert a third-party complaint against two new parties, Senior Living Residences, LLC ("SLR") and Wozny/Barbar & Associates, Inc. ("Wozny") ("motion to assert a third-party complaint"), [ECF No. 24]. Defendant NEFS opposes the motion to amend the answer, [ECF No. 23], and Wozny, one of the new potential third-party defendants, opposes the motion to assert a third-party complaint, [ECF No. 25]. For the reasons set forth below, both motions, [ECF Nos. 21, 24], are GRANTED.

I.      BACKGROUND

     A.      **Factual Background**

The following summary is drawn from Plaintiff's complaint. [ECF No. 1]. Plaintiff, an Indiana corporation with its principal place of business in New Jersey, is licensed to issue insurance policies in Massachusetts. [Id. ¶ 1]. FST is a Massachusetts corporation, with its principal place of business in Rhode Island, that is engaged in the business of inspecting, maintaining, servicing, and testing fire suppression systems. [Id. ¶ 3]. NEFS, incorporated and with its principal place of business in Massachusetts, designs and installs fire suppression systems. [Id. ¶¶ 4, 9]. Plaintiff insured the Subject Property. [Id. ¶ 8]. NEFS installed and/or designed the fire suppression system at the Subject Property. [Id. ¶ 10]. FST inspected, maintained, serviced, and/or tested the fire suppression system at the Subject Property. [Id. ¶ 12]. At all relevant times, the Subject Property was owned and operated by VOA Malden MT, LLC ("VOA Malden"). [Id. ¶ 7].

    The Subject Property's fire suppression system is a dry pipe system. [ECF No. 1 ¶ 13]. On November 24, 2018, water that had accumulated in the dry pipe system froze, which caused a pipe to crack and led to water damage to the Subject Property. [Id. ¶ 15]. A few months later, on January 21, 2019, accumulated water in the dry pipe system again froze, causing another crack and more water damage. [Id. ¶ 19]. VOA Malden submitted claims for the damage to Plaintiff, and Plaintiff paid VOA Malden $ 1,237,699.98 for necessary repairs. [Id. ¶¶ 22–23].

Pursuant to the terms of the insurance policy between Plaintiff and VOA Malden, Plaintiff is subrogated to VOA Malden's rights. [ECF No. 1 ¶ 24]. Plaintiff alleges that the improper design, installation, and/or maintenance of the dry pipe sprinkler systems caused the freezing incidents that led to the water damage at the Subject Property. [Id. ¶¶ 25–44].

### B. Procedural Background

Plaintiff filed its four-count complaint on February 28, 2020, alleging negligence and breach of contract against NEFS for its installation and design of the dry pipe system (Counts I and II) and against FST for its maintenance and servicing of the dry pipe system (Counts III and IV). [ECF No. 1 ¶¶ 25–44]. FST and NEFS filed their answers on April 22, 2020 and May 8, 2020, respectively. [ECF Nos. 4, 9].

On May 7, 2020, the Court issued a schedule pursuant to Federal Rule of Civil Procedure 16(b) that required all motions to amend pleadings to be served by July 15, 2020 and set December 15, 2020 as the date for the close of fact discovery. [ECF No. 8]. On December 2, 2020, shortly before the close of fact discovery, the parties filed a joint motion to extend the deadlines in the scheduling order. [ECF No. 18]. The next day the Court entered a revised scheduling order that has fact discovery closing on May 28, 2021 and dispositive motions due on November 1, 2021. See [ECF Nos. 18, 19]. The parties' joint motion to extend the schedule did not request an extension of the deadline to serve amended pleadings, which had already passed by the time the joint motion was filed and before FST's currently pending motions were filed. See [ECF No. 18].

On February 11, 2021, FST filed its motion to amend the answer. [ECF No. 21]. NEFS filed its opposition on February 22, 2021. [ECF No. 23]. On March 8, 2020, FST filed its motion to assert a third-party complaint. [ECF No. 24]. Wozny filed its opposition to the motion to assert a third-party complaint on March 16, 2020. [ECF No. 25]. Plaintiff does not oppose either motion. [ECF No. 21 at 6; ECF No. 24 at 6].

## II.     LEGAL STANDARD

Under Federal Rule of Civil Procedure 15(a), a party may amend its pleading once as a matter of course within twenty-one days after serving it or, if the pleading is one to which a responsive pleading is required, within twenty-one days after a motion to dismiss or answer has been filed.  Fed. R. Civ. P. 15(a)(1).  Otherwise, a party may only amend the pleading "with the opposing party's written consent or the court's leave."  Fed. R. Civ. P. 15(a)(2).  Rule 15 instructs that leave to amend should be "freely give[n] . . . when justice so requires."  Id.  "At a certain point," however, "this amendment-friendly regime may cease to govern."  United States ex rel. D'Agostino v. EV3, Inc., 802 F.3d 188, 192 (1st Cir. 2015).

In cases where a district court has issued a scheduling order under Rule 16(b) and the amendment sought contravenes a deadline imposed by the court, "Rule 16(b)'s more stringent good cause standard supplants Rule 15(a)'s leave freely given standard."  D'Agostino, 802 F.3d at 192 (first citing Cruz v. Bristol-Myers Squibb Co., P.R. Inc., 699 F.3d 563, 569 (1st Cir. 2012) and then citing Trans-Spec Truck Serv., Inc. v. Caterpillar Inc., 524 F.3d 315, 327 (1st Cir. 2008)).  "If [the Court] considered only Rule 15(a) without regard to Rule 16(b), [it] would render scheduling orders meaningless and effectively would read Rule 16(b) and its good cause requirement out of the Federal Rules of Civil Procedure."  Sosa v. Airprint Sys., Inc., 133 F.3d 1417, 1419 (11th Cir. 1998); see also O'Connell v. Hyatt Hotels of P.R., 357 F.3d 152, 155–56 (1st Cir. 2004) (citing Sosa with approval).

"Rule 16(b)'s 'good cause' standard emphasizes the diligence of the party seeking the amendment."  O'Connell, 357 F.3d at 155.  Under this inquiry, "[p]rejudice to the opposing party remains relevant but is not the dominant criterion."  Id.  Rather, "'[i]ndifference' by the moving party" may preclude leave to amend "irrespective of prejudice because such conduct is

incompatible with the showing of diligence necessary to establish good cause." Id. (citation omitted). "Particularly disfavored are motions to amend whose timing prejudices the opposing party by 'requiring a re-opening of discovery with additional costs, a significant postponement of trial, and a likely major alteration in trial tactics and strategy.'" Steir v. Girl Scouts of the USA, 383 F.3d 7, 12 (1st Cir. 2004) (quoting Acosta-Mestre v. Hilton Int'l of P.R., Inc., 156 F.3d 49, 52 (1st Cir. 1998)). "As a case progresses, . . . the burden on a plaintiff seeking to amend a [pleading] becomes more exacting." Id.

In addition to good cause, futility presents another potential bar to amendment. In the context of a motion to amend, "futility means that the complaint, as amended, would fail to state a claim upon which relief could be granted." O'Leary v. New Hampshire Boring, Inc., 323 F.R.D. 122, 126 (D. Mass. 2018) (citing Glassman v. Computervision Corp., 90 F.3d 617, 623 (1st Cir. 1996)). "If leave to amend is sought before discovery is complete and neither party has moved for summary judgment, the accuracy of the 'futility' label is gauged by reference to the liberal criteria of Federal Rule of Civil Procedure 12(b)(6)." Hatch v. Dep't for Child., Youth & Their Families, 274 F.3d 12, 19 (1st Cir. 2001). Under this standard, an amendment will not be deemed futile unless it fails to support a "plausible entitlement to relief." Rodriguez-Ortiz v. Margo Caribe, Inc., 490 F.3d 92, 95 (1st Cir. 2007) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 559 (2007)).

Finally, judicial economy may also be considered when deciding motions to amend. See EMC Corp. v. Pure Storage, Inc., 310 F.R.D. 194, 202–03 (D. Mass. 2015); Rockingham Cty. Nursing Home v. Harnois, No. 11-cv-11057, 2014 WL 176580, at *9–10 (D. Mass. Jan. 10, 2014).

Under the original scheduling order, the deadline for amendments to the pleadings was July 15, 2020. [ECF No. 8]. Because the parties' joint motion to extend discovery deadlines made no reference to a new deadline for amended pleadings, see [ECF No. 18 at 3], all amendments to pleadings should have been filed by July 15, 2020. Given the untimeliness of the motions to amend, the Court reviews the requests under Rule 16(b)'s "good cause" standard, which is based on diligence and prejudice to the non-moving parties, and also considers the futility of the proposed amendment and judicial economy.[1]

### III.  DISCUSSION

#### A.  Motion to Assert a Third-Party Complaint

Although a close call, the Court concludes that there is good cause to allow the motion to assert a third-party complaint, that the claims asserted against Wozny are not futile, and that allowing the addition of the parties and claims serves the important interest of judicial economy.

---

[1] Federal Rule of Civil Procedure 14 governs third-party practice and claims against third-party defendants. Fed. R. Civ. P. 14(a)(1) ("A defending party may, as third-party plaintiff, serve a summons and complaint on a nonparty who is or may be liable to it for all or part of the claim against it. But the third-party plaintiff must, by motion, obtain the court's leave if it files the third-party complaint more than 14 days after serving its original answer."). Although it seeks to assert a third-party complaint, FST styles both of its pending motions as motions to amend the pleadings pursuant to Federal Rule of Civil Procedure Rule 15(a) subject to Rule 16(b)'s "good cause" standard. [ECF No. 21 at 1–2, ECF No. 24 at 1–2]. Wozny argues under the same good cause standard in its opposition to the motion to assert a third-party complaint. [ECF No. 25 at 5–6]. Neither party identifies, and the Court is not aware of, any caselaw addressing the interplay between Rule 14(a) and Rule 16(b)'s "good cause" standard. As explained above, when deciding whether to permit amendment after a scheduling order has been entered, the Court considers "good cause," which is based on diligence and prejudice to the non-moving parties, as well as futility and judicial economy. These are also relevant considerations under Rule 14(a). See Lehman v. Revolution Portfolio L.L.C., 166 F.3d 389, 393 (1st Cir. 1999) (considering undue delay and prejudice); S. Shore Hellenic Church, Inc. v. Artech Church Interiors, Inc., No. 12-cv-11663, 2015 WL 846533, at *18–19 (D. Mass. Feb. 26, 2015) (considering futility and whether the third-party complaint would "avoid[] duplicative and circuitous proceedings"). Accordingly, the Court analyzes the motion to assert a third-party complaint under the Rule 16(b) "good cause" standard, as briefed by the parties.

1.      Claims Against Wozny

Wozny opposes the motion to assert a third-party complaint, claiming that FST's delay in asserting the claims is unjustified and prejudicial, and that the proposed claims against Wozny are futile. [ECF No. 25 at 6–18]. Wozny also argues that the motion violates Local Rule 15.1, [ECF No. 25 at 18–19], which states that "[a]mendments adding parties shall be sought as soon as an attorney reasonably can be expected to have become aware of the identity of the proposed new party," L.R. 15.1(a).

a.      Good Cause

FST asserts that it has demonstrated good cause to add Wozny to this action. [ECF No. 24 at 3–4]. FST first argues it was diligent in filing its motion to assert a third-party complaint because it was unable to ascertain Wozny's role "with regards to the design, installation, and maintenance of the dry pipe sprinkler system" or "fully assess" "Wozny's involvement at the [Subject Property], or the viability of a third-party claim, until it obtained [] outstanding discovery." [Id. at 4]. This "outstanding discovery" included NEFS' discovery responses, which were served in December 2020, and the depositions of NEFS' and SLR's representatives on January 13, 2021. [Id. at 3].

Wozny contends that FST "was well aware of [Wozny's] involvement in this Project long before NEFS submitted [its] responses," [ECF No. 25 at 14], and, in support, references (1) deposition testimony that "reveals that [Wozny] was 'likely involved' in [] pre-litigation discussions" after the water loss incidents, and (2) a memorandum authored by FST, which identified installation defects as the likely cause of the incidents and referenced a particular "AS-BUILT drawing." [ECF No. 25 at 15]. Wozny appears to argue that this is important because prior versions of that "AS-BUILT drawing" had been "submitted to [Wozny] for review and

approval" and Wozny had "returned comments [on the drawing] to NEFS in 2016." [Id.]. The Court recognizes that Wozny is not yet a party to this action and therefore may not have access to the discovery in this case, but, without more, cannot find a lack of diligence on FST's part. Wozny does not identify which deposition testimony prior to the January 2021 depositions revealed Wozny's involvement, and prior versions of a drawing submitted to NEFS with comments from Wozny, without more, do not demonstrate that FST was aware of the scope of Wozny's involvement in the two incidents. Further, Plaintiff's complaint does not identify Wozny or discuss Wozny's involvement in the incidents. Accordingly, the Court credits FST's assertion that it did know enough about Wozny's involvement in the Subject Property until after discovery progressed and finds the delay in bringing this motion to be the result of a slow discovery process rather than bad faith or indifference. See Penobscot Nation v. Mills, No. 12-cv-00254, 2014 WL 442429, at *3 (D. Me. Feb. 4, 2014) ("Defendant's request to amend does not reflect delay, rather it reflects the developing factual record related to this litigation.").

While Rule 16(b)'s "good cause" standard "focuses on the diligence (or lack thereof) of the moving party more than it does on any prejudice to the party-opponent," Somascan, Inc. v. Philips Med. Sys. Nederland, B.V., 714 F.3d 62, 64 (1st Cir. 2013) (quoting Flores-Silva v. McClintock-Hernandez, 710 F.3d 1, 3 (1st Cir. 2013)), prejudice is still a factor to be considered. FST urges that there would be little prejudice to the non-moving parties because discovery has not yet closed, the deadline for summary judgment motions has not passed, and there are no impending statute of limitations concerns. [ECF No. 24 at 4]. FST also asserts that no party would need to significantly alter its trial strategy, or would be required to undertake additional costs or experience an undue delay. [Id.]. Wozny counters that it would be severely prejudiced if FST's motion is granted because (1) adding Wozny will extend the relevant timeline for

discovery to 2015, which is when Wozny commenced its design services, and that will delay the resolution of the litigation for all parties and require litigation strategies to be reconfigured, [ECF No. 25 at 17], (2) there is insufficient time before fact discovery closes for Wozny to adequately complete discovery, [id.], and (3) all parties already know that the scope of Wozny's services did not include the services that are at issue in this dispute and adding Wozny as a party now will only "prolong the inevitable" while requiring the parties to needlessly expend time and resources, [id. at 17–18].

To start, the Court disagrees with FST's assertion that adding a new party to this action will not require additional discovery or alteration of trial strategy. At the very least, Wozny would need to be afforded an opportunity to prepare its defense and conduct its own discovery, should it choose to do so. On balance, however, the Court finds that adding Wozny would not unduly prejudice the parties, including the proposed new parties.

Wozny's need to conduct discovery could be resolved with an extension of the fact discovery period. Although Wozny argues that there is "no legal authority to allow for the Parties to again amend the Scheduling Order," [ECF No. 25 at 17 (citing Fed. R. Civ. P. 16(b)(2))], the Court "has 'broad discretion' to allow motions to extend deadlines," Gouin v. Nolan Assocs., LLC, 325 F.R.D. 521, 524 (D. Mass. 2017) (quoting Macaulay v. Anas, 321 F.3d 45, 49 (1st Cir. 2003)). As far as prejudicing the current parties to the litigation, Plaintiff does not oppose the motion and although the motion's Local Rule 7.1 certification states that NEFS and FST could not come to an agreement about the motion, [ECF No. 24 at 6], NEFS has not filed any response to the motion.

Overall, any prejudice to the non-moving parties is reduced here because fact discovery has not closed, dispositive motions are not due until November 2021, and a trial date has not yet

9

been set.  Cf. Somascan, Inc., 714 F.3d at 64–65 (affirming district court's denial of leave to amend a complaint and noting that "an additional burden is imposed [on the moving party] when leave to amend is sought after discovery has been completed and a motion for summary judgment has been filed by a defendant").  Thus, Wozny will have time to prepare a defense to FST's claims in advance of dispositive motions being filed and without the pressure of a looming trial date.

Accordingly, because there is still time for the current parties and any newly added parties to conduct additional discovery without causing a significant delay in the resolution of the case, the Court finds that Wozny has not demonstrated prejudice sufficient to bar FST's motion.

          b.      Futility

Wozny also argues that the contribution and common law indemnity claims that FST proposes to assert against Wozny are futile because "the economic loss doctrine insulates [Wozny] from any potential liability against [Plaintiff]" and FST's claims require a finding that Wozny is liable to Plaintiff.  [ECF No. 25 at 6].

          i.      Economic Loss Doctrine

The economic loss doctrine generally provides that "purely economic losses are unrecoverable in tort and strict liability actions in the absence of personal injury or property damage."  FMR Corp. v. Bos. Edison Co., 613 N.E.2d 902, 903 (Mass. 1993).  "Economic loss includes damages for inadequate value, costs of repair and replacement of the defective product or consequent loss of profits without any claim of personal injury or damage to other property."  Sharp v. Hylas Yachts, Inc., No. 11-cv-11814, 2015 WL 13656988, at *6 (D. Mass. Jan. 14, 2015) (quoting Wyman v. Ayer Props., LLC, 11 N.E.3d 1074, 1079–80 (Mass. 2014)).  When determining whether "other property" was damaged, courts have "define[d] the relevant product

from the purchaser's perspective" and "look[ed] to the product purchased or bargained for by the plaintiff rather than the product sold by the defendant." Sebago, Inc. v. Beazer E., Inc., 18 F. Supp. 2d 70, 91–92 (D. Mass. 1998) (finding that economic loss doctrine barred recovery for the damage roof insulation caused to a building because the relevant product was the entire building purchased by plaintiff).  In the construction context, the Superior Court of Massachusetts has found that "when the underlying contract was for the construction of a hotel," and not for an exterior insulation system and sealant, any damage caused by the insulation system to the hotel was only damage to the property itself. Pro Con, Inc. v. J & B Drywall, Inc., No. 03-cv-02063, 2006 WL 392123, at *1, *3 (Mass. Super. Ct. Jan. 31, 2006) (analyzing summary judgment motion).

Wozny argues that Plaintiff cannot recover against it for any tort claims because Plaintiff is seeking only economic losses for the damages done to the Subject Property itself and not for any personal injury or other property damage. [ECF No. 25 at 9].  Wozny reasons that damages to the "Subject Property" do not constitute damages to "other property" because VOA Malden "did not solely purchase a fire suppression system that subsequently caused damage to other property—[VOA Malden] contracted to receive a completely renovated structure, of which the fire suppression system was merely one component.  No additional damage occurred in this case, other than to the [Subject Property] itself." [ECF No. 25 at 10].  Accordingly, Wozny maintains that it cannot be liable to Plaintiff because all recovery is barred by the economic loss doctrine.

The Court agrees that Plaintiff is solely seeking to recover for damage to the Subject Property, [ECF No. 1 ¶¶ 22–23, 29, 34, 39, 44], and consequently, FST's proposed third-party complaint seeks contribution and indemnity for those damages, should it be found liable.

Overall, however, the record is simply too limited for the Court to conclude that the economic loss doctrine precludes FST's claims against Wozny. In particular, the Court, cannot determine "the product purchased or bargained for by" VOA Malden. See Sebago, Inc., 18 F. Supp. 2d at 91–92. Although Wozny asserts that VOA Malden "contracted to receive a completely renovated structure," nothing before the Court outlines the scope of any relevant contract with VOA Malden or describes the underlying property for which VOA Malden bargained. Accordingly, although Wozny very well may prevail at a later stage of the case, at this stage, the Court cannot rule that the economic loss doctrine would bar all recovery of tort claims.[2]

Because Wozny's economic loss doctrine argument does not now carry the day, the Court considers the futility of the contribution and common law indemnity claims.

### ii.     Contribution

FST asserts that it is entitled to contribution from Wozny pursuant to Massachusetts General Laws Chapter 231B. Under Massachusetts General Laws Chapter 231B, § 1(a), "where two or more persons become jointly liable in tort for the same injury to person or property, there shall be a right of contribution among them even though judgment has not been recovered against all or any of them." Mass. Gen. Laws ch. 231B, § 1(a). "A right of contribution exists only if the party would be 'directly liable to the injured person.'" Hudson-RPM Distributors, Inc. v. Bowditch & Dewey, LLP, No. 19-cv-40095, 2020 WL 8248449, at *2 (D. Mass. Oct. 21, 2020) (quoting LeBlanc v. Logan Hilton Joint Venture, 974 N.E.2d 34, 42 (Mass. 2012)). "[F]or

---

[2] Wozny relies on Pro Con, Inc., but in that case the party's motion for summary judgment was before the court and the court was persuaded that the economic loss doctrine barred tort claims against a subcontractor because the underlying contract was for the construction of a hotel. 2006 WL 392123, at *3. The Court does not have the benefit of that information here.

contribution to be available, joint tortfeasors need not be liable under the same legal theory." Walter & Shuffain, P.C. v. CPA Mut. Ins. Co., No. 06-cv-10163, 2008 WL 885994, at *5 (D. Mass. Mar. 28, 2008) (citing Wolfe v. Ford Motor Co., 434 N.E.2d 1008, 1011 (Mass. 1982)).

Count III of Plaintiff's complaint asserts a negligence claim against FST, which sounds in tort, [ECF No. 1 ¶¶ 35–39], and therefore contribution is theoretically available, Mass. Gen. Laws ch. 231B, § 1(a). FST's proposed third-party complaint alleges that: (1) Wozny was "engineer of record for the subject property and was responsible for the design, installation, and/or certification of the dry pipe sprinkler system," [ECF No. 24-1 ¶ 14], (2) the "[t]he subject dry pipe sprinkler system has encountered numerous deficiencies related to its design and/or installation, including but not limited to, improperly pitched pipes and unidentified and/or deficient low points," [id. ¶ 15], (3) "[d]ue to the improper design, certification, and/or installation of the dry pipe system, water was improperly trapped within the piping, which froze and caused water damage," [id. ¶ 16], and (4) Wozny failed to identify a low point in the system, which led to the second incident, [id. ¶ 12]. Taking the factual allegations of the third-party complaint as true, see Rodriguez-Ortiz, 490 F.3d at 95, FST has pleaded facts that allow for the plausible inference that Wozny is at least partly liable for the damages sustained to the Subject Property.

Wozny argues that FST's contribution claim is futile because Wozny cannot be liable to Plaintiff in tort due to the economic loss doctrine and therefore it cannot be considered a joint tortfeasor with FST, as required by Chapter 231B. [ECF No. 25 at 10–11]. As explained above, because the Court cannot determine that the economic loss doctrine bars all recovery here, it does not provide a basis for finding that the claim is futile.

### iii. Common Law Indemnity

"A tort-based, or common-law, right to indemnification is available 'where the person seeking indemnification did not join in the negligent act of another but was exposed to liability because of that negligent act.'" Hernandez v. City of Bos., 277 F. Supp. 3d 176, 180 (D. Mass. 2017) (quoting Rathbun v. W. Mass. Elec. Co., 479 N.E.2d 1383, 1385 (Mass. 1985)).

Wozny argues that FST's claim for common law indemnity is futile because it seeks recovery for solely economic losses on a tort-based theory of liability and, as such, recovery is barred by the doctrine of economic loss. [ECF No. 25 at 11]. For the reasons described above, this argument also fails here.

Wozny also contends that the common law indemnity claim is futile because "if FST were found to be liable to [Plaintiff], it would be as a result of FST's own, independent liability, rather than through vicarious liability for [Wozny's] actions" and common-law indemnity requires that the party seeking indemnification not be at fault. [ECF No. 25 at 12]. Plaintiff alleges that FST caused damage to the Subject Property through its "negligence, careless, reckless, and/or negligent acts or omissions" relating to the servicing and maintenance of the Subject Property's fire suppression system. [ECF No. 1 ¶¶ 35–39]. FST asserts in its third-party complaint, however, that "FST has been potentially exposed to derivative or vicarious liability due to Wozny's conduct," [ECF No. 24-1 ¶ 26], "FST was not in *pari delicto* with Wozny and did not participate in any alleged negligence," [id. ¶ 27], and "FST has denied, and continues to deny, [P]laintiff's allegations," [id. ¶ 22]. Accepting as true the allegations in the third-party complaint, see Rodriguez-Ortiz, 490 F.3d at 95, the Court finds that FST has plausibly alleged a claim for common law indemnity, Hernandez, 277 F. Supp. 3d at 180 (denying motion to dismiss

14

common law indemnity claim even though plaintiff alleged that defendants were primary tortfeasors).

        c.        Local Rule 15.1

Wozny's final argument for denying the motion is that it violates Local Rule 15.1. [ECF No. 25 at 18–19]. Local Rule 15.1(a) states that "[a]mendments adding parties shall be sought as soon as an attorney reasonably can be expected to have become aware of the identity of the proposed new party." L.R. 15.1(a). While the Court agrees that FST did not move to add Wozny as a party as soon as it became aware of Wozny's identity,[3] ultimately "[d]istrict [c]ourts enjoy broad latitude in administering local rules," Air Line Pilots Ass'n v. Precision Valley Aviation, Inc., 26 F.3d 220, 224 (1st Cir. 1994), including Local Rule 15.1.[4] In this case, where fact discovery has not yet closed and it is not apparent from the record before the Court that FST intentionally delayed in filing the motion, the Court will not deny the motion to assert a third-party complaint based on a failure to strictly comply with Local Rule 15.1(a).

---

[3] Other filings in this case indicate that FST asked questions about Wozny in the January 13, 2021 deposition of SLR's former president Peter J. Mullin, which demonstrates that FST was aware of Wozny prior to that date. See [ECF No. 23-4 at 4 (deposition testimony describing Mullin's understanding of Wozny's scope of services at the Subject Property and recollection that Wozny was present at a meeting after the second incident given in response to questions about Wozny)].

[4] Wozny relies on Stuart v. Town of Framingham, No. 16-cv-12559, 2018 WL 11241962, at *1–2 (D. Mass. Nov. 15, 2018), to support its Local Rule 15.1 argument. The facts of this case differ from those before the court in Stuart. In Stuart, the court found that the plaintiff violated Local Rule 15.1 when it failed to timely amend to add a defendant to the original complaint. There was no dispute that the plaintiff was aware of the proposed defendant at the inception of the litigation because the proposed defendant was identified in the complaint and the plaintiff conceded that the newly added party "has been a central witness from the inception of [the] litigation." Id. at *1.

d.      Judicial Economy

Finally, there is no dispute that allowing FST to proceed with contribution and indemnity claims against Wozny promotes judicial economy.  Where the claims against Wozny stem from the same incidents raised in Plaintiff's complaint and appear to rely on largely the same facts, it makes more sense and is more efficient to allow these related claims to be litigated in one case rather than requiring FST to initiate a new, related action concerning these same incidents.

2.      Claims Against SLR

The Court also finds there is good cause to allow the motion to assert a third-party complaint against SLR.

FST's argument that it was diligent in asserting claims against SLR is the same as its argument concerning its claims against Wozny.  FST contends that it was through the January 2021 depositions that SLR's "role[] become clear," which allowed FST to "fully assess" SLR's "involvement at the subject property, or the viability of a third-party claim."  [ECF No. 24 at 3–4].

Deposition testimony from an FST representative taken in October 2020 demonstrates that, at minimum, FST was aware of SLR and that it had a role in managing the Subject Property, prior to the date of that deposition.  [ECF No. 23-5 at 3 (A. "It's Senior Living Residences, LLC, I believe that's the owner's management company.")].  Despite this, and in the absence of opposition by SLR or other non-moving parties in this litigation, the Court credits FST's representations that it needed additional discovery, including a deposition of a former SLR employee, to learn the extent of SLR's role and to be able to assess the viability of its claims against SLR.  Again a close call, but the Court finds that FST has been reasonably diligent in filing its motion to assert a third-party complaint against SLR.

For the reasons described above in reference to the addition of Wozny, see Section III. A.1 supra, the Court likewise finds that on balance, the parties will not be prejudiced if FST's motion to assert a third-party complaint against SLR is granted.  Notably, the proposed new party, SLR, has not moved to oppose its addition to the lawsuit, even though it was served with a copy of the proposed third-party complaint on February 18, 2021.  See [ECF No. 24 at 6].

Finally, the interest of judicial economy would be served by allowing FST leave to assert its proposed third-party complaint against SLR.[5]  The claims against SLR are related to the same incidents alleged in Plaintiff's complaint and involve the same facts, and hearing these claims together would prevent the need for duplicative litigation.

Accordingly, FST's motion to assert a third-party complaint is GRANTED.

**B.     Motion to Amend the Answer**

The Court next considers FST's motion to amend its answer.  FST's proposed amended answer states facts and crossclaims alleging that both flooding incidents at the Subject Property were due to NEFS' improper installation and design.  [ECF No. 21-1].  The Court finds that, even though FST was not diligent in filing this motion, good cause exists to allow FST to amend its answer and allowing the amended answer will serve the important interest of judicial economy.

FST contends that it acted with diligence in filing its motion to amend because it was not aware of the viability of potential crossclaims until December 1, 2020, when it received interrogatory responses from NEFS.  [ECF No. 21 at 3].  And further, that even with those interrogatory responses, FST could not assess the full scope of its potential crossclaims until January 13, 2021, when it deposed NEFS' Rule 30(b)(6) representative and a representative from

---

[5] No party argues that the proposed claims against SLR are futile.

SLR.  [Id.].  For these reasons, FST argues, it could not have filed its amended answer before February 11, 2021.  NEFS counters that FST's claim that it "recently clarified evidence" is contrary to the facts of the case because documents show that the relevant information was available to FST before the lawsuit was even filed.  [ECF No. 23 at 5–6].

The Court finds that FST did not act diligently.  FST's diligence argument hinges on its claim that it discovered new information in December 2020.  To the contrary, and unlike with SLR and Wozny, the filings in this case and the documents offered by NEFS in its opposition show that FST was aware of facts relating to NEFS' role in the freezing incidents months before it filed its motion to amend the answer, if not longer.  Accordingly, FST's decision to wait until February 2021 to file the motion does not reflect diligence.

Specifically, Plaintiff clearly alleges in its complaint that NEFS was responsible for the installation and design of the dry pipe system and that faulty installation and design caused the incidents.  [ECF No. 1 ¶¶ 9–10, 25–34].  Additionally, discovery produced by FST in this litigation shows that it was aware of facts relevant to the crossclaims it now seeks to assert well before December 2020.  See [ECF No. 23-8 (FST's interrogatory responses)].  For example, FST's responses to Plaintiff's interrogatories, which were served on August 10, 2020, attest that FST inspected the Subject Property after both incidents and found that faulty installation or design was at least partly responsible for the flooding.  [Id. at 6–7].  FST's responses further explain that after investigation, FST found that the first incident was caused by a sagging pipe because "there was no hanger connecting the building structure and the arm over pipe to the frozen/broken sprinkler head," [id. at 6], and that the second incident was caused by "improperly pitched pipes and faulty configuration of the system," [id. at 7].

As noted above, although Rule 16(b)'s "good cause" standard "focuses [more] on the diligence (or lack thereof) of the moving party," Somascan, Inc., 714 F.3d at 64, prejudice to the party-opponent remains relevant. FST argues that NEFS will not be prejudiced if FST is permitted to assert its cross claims. [ECF No. 21 at 4]. NEFS disagrees and contends that it will be "severely prejudiced" by the amendment. [ECF No. 23 at 7].

This action has been pending for more than a year and NEFS avers that it has proceeded on the assumption that it will not need to defend crossclaims from FST and that it could rely on a subrogation clause included in a relevant contract as a defense to Plaintiff's claims. [ECF No. 23 at 8]. For these reasons, NEFS represents that it has not served discovery on FST and has served only limited discovery relating to subrogation on Plaintiff. [Id.].

To be sure, adding crossclaims now will require NEFS to adjust its trial strategy to defend against crossclaims and to seek additional discovery. See Steir, 383 F.3d at 12 ("Particularly disfavored are motions to amend whose timing prejudices the opposing party by 'requiring . . . a likely major alteration in trial tactics and strategy.'" (quoting Acosta-Mestre, 156 F.3d at 52)). On balance, however, NEFS will not be unduly prejudiced by FST amending its answer to assert crossclaims. This is particularly true considering the Court's ruling on FST's motion to assert a third-party complaint, which adds two new parties and will likely require an extension of the fact discovery deadline. Discovery has not yet closed, the deadline for summary judgment has not yet passed, and a trial date has not been set. Cf. Somascan, Inc., 714 F.3d at 64–65.

Finally, NEFS does not assert that FST's claims against it are futile and in fact argues that FST "can initiate a separate contribution action if it is found liable in this matter." [ECF No. 23 at 8]. Allowing FST to proceed with these crossclaims in this case is preferrable to

19

requiring it to initiate a separate action, which will doubtless result in a greater expenditure of judicial (and party) resources.

Although, diligence is the "dominant criterion" in the "decisional calculus," Miceli v. JetBlue Airways Corp., 914 F.3d 73, 86 (1st Cir. 2019), in the specific circumstances of this case, where the non-moving party will not be unduly prejudiced and judicial economy will be served by permitting the amendment, the motion to amend the answer will be granted.

## IV.   CONCLUSION

In sum, FST's motion to assert a third-party complaint, [ECF No. 24], and its motion to amend the answer, [ECF No. 21], are both GRANTED.  Within fourteen (14) days after FST's answer has been amended and the third-party complaint has been filed and answered, the parties, including Wozny and SLR, shall jointly file a proposed schedule, or, if they are unable to reach an agreement, individual proposed schedules.[6]

**SO ORDERED.**

May 10, 2021                                                                       /s/ Allison D. Burroughs
                                                                                            ALLISON D. BURROUGHS
                                                                                            U.S. DISTRICT JUDGE

---

[6] This assumes that, given the circumstances, the complaints will be answered.  If a motion to dismiss is filed, the Court will set a schedule once that motion has been resolved.